REBECCA H. HOLLYDAY *vs.* RICHARD HOLLYDAY, and others.

*Will— Codicils— Construction— Substituted legacy.*

"A testatrix, by the first clause of her will, bequeathed to her sister for life the interest arising from a specific fund of $4,000, and directed that after her death the said sum of $4,000, should be distributed in certain specified amounts among other legatees of whom R. was to receive $500. By the second codicil to her will she revoked this legacy to R. and directed that it be divided equally between him and his sister. By the third codicil she repeated the revocation and modification of this legacy to R., and also provided as follows: "Whereas by my last will and testament I have given to my sister $4,000, I do hereby revoke the said legacy, and instead of $4,000, I hereby give to my said sister, at my death $3,000." After deducting the various specific legacies, including those in remainder in the first clause of the will, and the costs and expenses of administration, there would be no residuary estate out of which to pay the $3,000, or, if any, much less than would suffice to pay said legacy. HELD:

1st. That the intention of the testatrix in making the third codicil to her will, was to substitute the income derivable from $3,000, to her sister for life, in the place of the interest arising from $4,000, for life bequeathed by her will, and this substituted legacy was payable out of the same fund as the legacy given by the will.

2nd. That the remaining thousand dollars should be immediately distributed *pro rata* among those entitled under the first clause of the will, other than R. and his sister, who were entitled to be paid thereout $500, the same to be equally divided between them.

APPEAL from the Circuit Court for Talbot County, in Equity.

This is an appeal from a decree of the Circuit Court for Talbot County, (WICKES, J.) passed in a case stated,

for the purpose of obtaining a judicial construction of the will of Henrietta M. Hollyday, deceased, and of the codicils thereto.  The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, FOWLER, McSHERRY, and BRISCOE, J.

*Henry C. Kennard,* (with whom was *S. Teackle Wallis* on the brief,) for the appellant.

The estate which the appellant takes in the three thousand dollars is an absolute estate, and is payable out of the same fund out of which, or by which, the estate for life in the four thousand dollars left by the will, was to be paid; that is, out of the four thousand dollars of the funds in the hands of Mrs. Richard C. Hollyday.

The language is, that it is to be paid *at the death* of the testatrix.  It is impossible to express the intent more clearly.  The time fixed for the payment precludes the possibility of a life estate.  When the testatrix intended to give a life estate, as in the first clause of the will, she used language which could not be misunderstood—"the interest or income arising from the sum of four thousand dollars," &c.  When she changes the bequest from a life estate, she uses language equally explicit, and which can only designate an absolute estate.  Nothing else could she give "to my said sister *at my death.*"  This intent is made clear by the fact that the amount is reduced, and there is no evidence of any change in her feeling toward the appellant.  The clause in the codicil expressly refers to the will, and revokes in terms the provision for life therein contained.  It can only be read intelligently, in connection with the provision of the will which it revokes.  Its true meaning can be gathered only by interpolating certain words from

the revoked provision.   In that way it is easily under-
stood as, "whereas by my last will and testament, duly
executed and witnessed, I have given to my. sister, Re-
becca Hollyday, *the interest on the sum of* four thousand
dollars *for her life.*   I do hereby revoke the said legacy,
and instead of four thousand dollars, *for her life*, I hereby
give to my said sister, *at my death*, three thousand dol-
lars."   The provision in the will is expressly revoked,
and that in the codicil substituted for it—at least, so far
as the life estate to the. appellant is concerned.   There
is, therefore, no question as to whether a revocation is
effected by the codicil.

When the testatrix made the change, she necessarily
had before her the question of an annuity, as that was
the shape of the legacy which she was changing.

The fact that the provision as to the $4,000 is express
that its interest only was to be paid as it fell due, and
the substituted legacy is equally as express that it was
all to be paid *at testatrix's death*, leaves no room for the
contention that an annuity was intended.   This, too,
fixes the date from which interest is to be allowed.

If an absolute estate was by the codicil substituted for
a life estate, then it was payable out of the same fund
out of which the original legacy was to be paid, in the
absence of language showing a different intent.   An
added or substituted legacy is *prima facie* payable out
of the same funds, and subject to the same incidents and
conditions as the original legacy.   Where a legacy is
given expressly in addition to or *in substitution for* one
previously given,. it is subject to the same incidents and
conditions as attached to the original legacy.   The
ground of this is, that it is assumed that where such
words, as "in lieu of, or in addition to," are used, the
will is intended to stand, *mutatis mutandis*, merely adding
or substituting another amount.   *Hawkins on Wills,
marg. pages* 306 *to* 308; *Johnstone vs. The Earl of Harrowby,*

1 *De Gex, F. & J.*, 183; *Leacroft vs. Maynard*, 3 *Bro. C. C.*, 232; *Crowder vs. Clowes*, 2 *Ves., Jr.*, 449; 1 *Redfield on Wills*, 359, 360; 1 *Roper on Legacies*, 604; 1 *Jarman on Wills*, (5th Ed.) 185, *bottom page* 215; 2 *Wms. on Ex'rs*, (7th Ed.) *top page* 1405, *bottom page* 1296, *notes; Pike vs. Walley*, 15 *Gray*, 345–6; *Flood on Wills of Personal Prop.*, 491–2; *Cooper vs. Day*, 3 *Mer.*, 154–5.

Nor does the use of the words, "I revoke," and the prior gift prevent the substituted legacy from having the incidents of the former one. *Hawkins on Wills, marg. page* 309; *Cooper vs. Day*, 3 *Mer.*, 154; *Fisher vs. Brierley*, 30 *Beav.*, 267.

But this doctrine does not extend to making the substituted or additional gift a life estate because the original estate was, nor to giving an interest to those who were interested in remainder under the original gift. *Hawkins on Wills, marg. page* 308; *Re Mores' Trust*, 10 *Hare*, 171, 5–6; *Mann vs. Fuller, Kay*, 624–6; 1 *Jarman on Wills*, (5th Ed.,) *top page* 185, *bottom page* 215; 2 *Williams on Ex'rs*, (7th Ed.,) *bottom page* 1296, *and notes;* 1 *Redfield on Wills*, 359, 360; *Buchanan, et al. vs. Lloyd, Trustee*, 64 *Md.*, 312.

The only exception to this rule is when an *intention* appears to sweep away the original legacy *with all its incidents and conditions* and substituting an entirely new gift. As where a legacy contingent upon the legatee arriving at a certain age, marrying or doing some certain thing, is revoked and an absolute estate substituted for it. *Hawkins on Wills*, 308.

In such case, there is a clear intent not only to revoke the prior legacy, but all the incidents and conditions connected with it and on which it depended. This cannot apply to the substitution of an absolute for a life estate. The only result of the substitution in such a case is that the substituted gift is not necessarily for life, and the remainder interests do not necessarily attach to it.

*Hawkins on Wills,* 308; *Mann vs. Fuller, Kay,* 624; 1 *Redfield on Wills,* 359–60.

In determining the meaning of wills, there are certain well-established rules : 1st. The intent is to govern; 2d. Subject to that, a revocation is confined to what is declared to be revoked if it can be done consistently with the intent. Wills are modified by codicils to the extent to which they are inconsistent with them, but if the provisions of the two can be reconciled, they must be. *If they are inconsistent, the codicil, as being the latest expression, must prevail. Flood on Wills of Per. Prop.,* 496; *Pickering vs. Langdon,* 22 *Maine,* 430; *Nelson vs. McGiffert,* 3 *Barb. Ch.,* 164–5; *Lee vs. Pindle,* 12 *Gill & J.,* 288– 305; *Iglehart vs. Kirwan, Adm'r,* 10 *Md.,* 559–564; *Johns Hopkins Univ., et al. vs. Pinckney,* 55 *Md.,* 380; *Kunkel vs. Macgill, et al.,* 56 *Md.,* 123; *Thomas vs. Levering,* 73 *Md.,* 451.

*James Alfred Pearce,* for the appellees.

The third codicil can in no event, operate to revoke the specific legacy of the principal of the $4,000 to Marietta P. Gibson and others, after Rebecca's death.

The true intent of the testatrix in making the third codicil, was simply to reduce the bequest of the income on $4000 to Rebecca for life, to a bequest of income for life on $3000, and to leave the will in all other respects as it stood after the execution of the second codicil.

Or, if the last be not the true construction, then the third codicil merely revokes the specific legacy of the income on $4000 to Rebecca for life, and substitutes for it a general legacy of $3000, payable out of testatrix's general estate at her death.

In all cases of supposed conflict between a will and a codicil, it is an established rule not to disturb the dispositions of the will, further than is absolutely necessary to give effect to the codicil. *Jarman on Wills, top page* 189.

Hollyday *vs.* Hollyday.

A codicil is no revocation of a will, except in the precise degree in which it is inconsistent with it, unless there be words of revocation. *Lee vs. Pindle,* 12 *Gill & J.,* 288.

Unless there are express words of revocation, of all the interest to be affected, or unless there is an absolutely inconsistent disposition of all the previously devised property, there is no revocation beyond the precise degree of inconsistency. *Jarman on Wills, top page* 186.

When the devise or bequest in the will, is clear and free from doubt, the intention to revoke by the codicil must be equally clear and explicit. *Jones vs. Earle,* 1 *Gill,* 395; *Johns Hopkins University, et al. vs. Pinckney,* 55 *Md.,* 380, 381.

What is plainly given by the will, is not to be revoked or withdrawn by doubtful or ambiguous expressions employed in the codicil. *Buchanan, et al. vs. Lloyd, Trustee,* 64 *Md.,* 311. See also *Reichard's Appeal,* 9 *Atlantic Reporter,* 116 *Penn. St.,* 232; *Quincy vs. Rogers,* 9 *Cush.,* 291; *Wetmore vs. Parker,* 52 *N. Y.,* 450.

The execution of a codicil *per se* operates as a republication of the will, and the two are to be regarded as but one instrument, speaking from the date of the codicil. *Goodtitle vs. Meredith,* 2 *Mau. & Sel.,* 13.

If the bequest of $3000, is held to be an absolute legacy of $3000 principal, does it bear interest from testatrix's death, or only after the expiration of a year from that date? It is conceded that if the bequest is held absolute, by force of the words, "at my death," then as the executor withholds the bequest to meet the contingency of debts, interest should be allowed from testatrix's death.

A further question, is whether, if the bequest of three thousand dollars is absolute, is it a specific legacy, part of the four thousand dollars mentioned in the first clause

of the will, or a general legacy, not payable out of any special fund? The Court held it to be a general legacy, to be paid out of the general personal estate of the testatrix. This ruling, is clearly correct. Courts always construe legacies as general, unless a contrary intention plainly appears. *Dugan vs. Hollins*, 11 *Md.*, 41; *England vs. Vestry of Prince George's Parish*, 53 *Md.*, 469, 470; *Kunkel vs. Macgill*, 56 *Md.*, 123; *Gelbach vs. Shively*, 67 *Md.*, 501.

An additional question is whether, if a general legacy, the codicil revokes not only the bequest of income to Rebecca for life, but also the specific bequest of principal after her death, and whether the absolute legacy of $3000 can be paid out of this $4000. See *Quincy vs. Rogers*, 9 *Cush.*, 291; *Wetmore vs. Parker*, 52 *N. Y.*, 461; *Johns Hopkins University vs. Pinckney*, 55 *Md.*, 381; *Reichard's Appeal*, 9 *Atl. Rep.*, 311, 116 *Penn. St.*, 232; *Thomas vs. Levering*, 73 *Md.*, 451; *Pike vs. Walley*, 15 *Gray*, 345; *Brown vs. Brown*, 137 *Mass.*, 539.

In no event can the appellees' legacies be affected by the third codicil, and they must be paid in full without priority or preference among them, out of the $4000 on Rebecca's death. This is necessarily so, if the codicil does not revoke these legacies, and it is equally true whether the legacy of $3000 be of income on that amount, part of the $4000, or of principal from the general personal estate.

BRISCOE, J., delivered the opinion of the Court.

The appeal in this case is for the purpose of obtaining a construction of the will of Henrietta M. Hollyday, deceased, and of certain codicils thereto. The will was executed on the 20th day of May, 1887. The first and second codicils were executed on the 14th day of April, 1890, and the third codicil on the 20th of the same month. The first clause of the will contains the follow-

ing bequest: "It is my will that the interest or income arising from the sum of four thousand dollars of the funds of money now in the hands of Mrs. Richard C. Hollyday, living at Ratcliffe, Talbot County, in the State aforesaid, belonging to me, and for which funds and the interest thereon I hold the obligations of Richard C. Hollyday, deceased, her husband, shall be paid over to my sister, Rebecca H. Hollyday, so long as she shall live, and at her death the said sum of four thousand dollars shall be divided and disposed of as follows, to wit : Two thousand thereof I then give to my nephew, Richard C. Hollyday, the son of my brother, Richard C. Hollyday, deceased; one thousand dollars to my nephew, Clarence Hollyday; five hundred dollars to my nephew, Richard Hollyday, of Readburne; two hundred dollars to Mrs. Richard C. Hollyday, of Ratcliffe; two hundred dollars to my niece, Meta Hollyday; fifty dollars to my niece, Nannie Tilghman; and a like sum of fifty dollars to her son, Walter B. Tilghman." By the second codicil to her will, she revokes the clause in her will leaving $500 to her nephew, Richard Hollyday, of Readburne, and directs this $500 to be divided equally between said Richard Hollyday and her niece, A. Maria Hollyday. And the third codicil, so far as it bears upon this case, is in these words : "Whereas, by my last will and testament, duly executed and witnessed, I have given to my sister, Rebecca Hollyday, four thousand dollars, I do hereby revoke the said legacy, and instead of four thousand dollars, I hereby give to my said sister, at my death, three thousand dollars. I do hereby revoke the five hundred dollars by my said will to my nephew Richard Hollyday, and do hereby give to my said nephew and to his sister Maria Hollyday the said five hundred dollars, to my said nephew and his sister, Maria Hollyday, to be equally divided between them," &c., &c. The principal question, then, to be considered by this Court,

is how far the first clause of the will is revoked or altered by the third codicil. The questions to be decided having been submitted to the Court below in the form of a special case stated, the Court held :

1st. That the legacy of three thousand dollars, bequeathed to Rebecca H. Hollyday by the third codicil to the will, is an absolute legacy.

2nd. That said legacy of three thousand dollars is a general legacy, and not a special legacy, and that it is not payable out of the four thousand dollars mentioned in the first clause of the will, but is payable only out of the general personal estate of the testatrix. But to this construction of the will we cannot assent. To do so would manifestly defeat the intention of the testatrix in the testamentary disposition of her property. It is admitted by an agreement in the case, "that after deducting the specific legacies mentioned in the will, including the legacies, amounting to four thousand dollars, to the plaintiffs, after the death of Rebecca H. Hollyday, and the costs and expenses of administration, there will be no residuary estate out of which to pay the three thousand dollars left by the third codicil of the will, or, if any, much less than would be sufficient to pay said legacy." Now, it is a well established rule in the construction of wills that they must be so construed as to give effect to every part of them, if possible, and the whole must be considered, in order to ascertain the testator's intentions; and we are of the opinion that the object and intention of the testatrix in making the third codicil to her will, was simply to substitute an income on $3,000 for life in the place of the income on $4,000 for life bequeathed by the first clause of the will to her sister. And it is equally as plain that this substituted legacy is payable out of the same fund as the legacy given by the will. To hold otherwise would defeat one of the objects of her bounty, and leave her sister abso-

lutely unprovided for by the will, which could not have been her intention when said codicil was made. The second codicil revokes the legacy of five hundred dollars to her nephew Richard Hollyday, and bequeaths it to be equally divided between him and his sister Maria Hollyday, and with this exception, the first clause of the will remains unaffected by the codicil. The only other question presented, is as to the disposition of the remaining $1,000; and this, we think, is immediately divisible *pro rata* among those entitled to the estate under the first clause of the will, other than Richard and Maria Hollyday, who are entitled to be paid five hundred dollars out of the one thousand to be distributed; and upon the death of Rebecca H. Hollyday the $3,000 is to be divided among them in like manner. We shall, therefore, reverse the decree appealed from, and remand the cause so that a decree can be passed in accordance with these views. The costs to be paid out of the estate in the hands of the executor.

*Decree reversed, and*
*cause remanded.*

(Decided 17th June, 1891.)